676 P.2d 1344

**RICHARDSON FORD SALES, INC.,**
Plaintiff-Appellee,

v.

**Frances A. JOHNSON and Glenn M. Johnson, Defendants-Appellants.**

**No. 7229.**

Court of Appeals of New Mexico.

Jan. 24, 1984.

Ethel J. Abeita, Indian Pueblo Legal Services, Inc., Laguna, Jim D. James, Indian Pueblo Legal Services, Inc., San Juan Pueblo, Robert N. Hilgendorf, Santa Fe, for defendants-appellants.

William H. Hyde, Albuquerque, for plaintiff-appellee.

## OPINION

WOOD, Judge.

By written contract signed in May 1980, defendants agreed to buy a used pickup truck from plaintiff and pay for it by monthly payments. Unable to make the monthly payments, defendants voluntarily returned the pickup to plaintiff on October 1, 1981. Thereafter, plaintiff sold the pickup to a third party at a private sale. Plaintiff sued defendants for the unpaid portion of the sales price which remained after crediting the price received at the private sale. The trial court entered judgment for the amount of the deficiency. Defendants counterclaimed; the counterclaim sought relief under both the Unfair Practices Act and the Uniform Commercial Code. The trial court denied relief on the counterclaim. Defendants' appeal raises three issues: (1) whether plaintiff violated the Unfair Practices Act; (2) notice to defendants of the intended private sale; and (3) whether the private sale was commercially reasonable.

### Unfair Practices Act

NMSA 1978, Sections 57–12–1 to 57–12–16, are the statutes pertaining to the alleged unfair practice in this case. Our discussion concerning plaintiff's alleged unfair practice subdivides into five topics: (a) pleading and issues; (b) unfair practices under the New Mexico statute; (c) requirement for an unfair or deceptive practice; (d) requirement for an unconscionable practice; and (e) causation.

#### (a) Pleading and Issues

The brief-in-chief asserts the trial court erred in holding that plaintiff did not commit either an "unfair or deceptive" trade practice or an "unconscionable" trade prac-

tice. The factual basis for both items is that the credit representative who contacted defendants about their payments did not tell them they could be liable for a deficiency if the pickup was returned. This contention is made in disregard of the provision in the written contract: "If the money from the sale [after repossession] is not enough to pay off this contract and costs, the Buyer will pay what is still owed to the Creditor, if allowed by law." Liability for a deficiency was allowed by law, it being undisputed that the pickup was a consumer good.[1] *Compare* NMSA 1978, § 55-9-504(2) *with* NMSA 1978, § 55-9-504(2) (Cum.Supp.1983). There is no claim, in the appeal, as to the validity of this contract provision and no claim that it did not apply to defendants.

Defendants' counterclaim alleged that sale of the pickup at a private sale was not commercially reasonable and was not in good faith, and alleged that a reasonable price was not received for the vehicle. The counterclaim then alleged: "The foregoing acts and omissions constitute unfair and deceptive and/or unconscionable trade practices * * *." No issue as to an unfair trade practice in connection with a deficiency was raised by this pleading. However, evidence that the credit representative did not tell defendants about a possible deficiency was admitted without objection at trial.

Defendants requested a finding that the failure to tell them about the possibility of a deficiency was an unconscionable trade practice. Defendants requested a conclusion that this failure was either an "unfair or deceptive" trade practice or an "unconscionable" trade practice. Plaintiff requested neither findings nor conclusions as to either item. The trial court denied defendants' requests. The trial court found that plaintiff did not inform defendants "after repossession" that defendants would be liable for a deficiency. This finding is both incorrect and irrelevant. It is incorrect because the notice given to defendants referred to liability for a deficiency. It is irrelevant because information disclosed after repossession does not, in this case, pertain to disclosing information before or at the time defendants returned the pickup. The trial court concluded there was neither an "unfair or deceptive" nor an "unconscionable" trade practice.

We avoid sorting out what issues were properly preserved for appeal. We discuss both "unfair or deceptive" and "unconscionable" trade practices on the basis of an assumption. The assumption is that defendants requested a finding as to both items, and the trial court's denial of the request was a denial of the requested finding that went to both items.

### (b) Unfair Practice Under the New Mexico Statute

Section 57-12-3 declares both "unfair or deceptive" and "unconscionable" trade practices to be unlawful.

Section 57-12-4 states: "It is the intent of the legislature that in construing Section 3 [57-12-3 NMSA 1978] of the Unfair Practices Act the courts to the extent possible will be guided by the interpretations given by the federal trade commission and the federal courts."

Relying on Section 57-12-4, defendants assert that a trade practice that a federal court holds to be unfair is unlawful and a violation of the New Mexico statute. Thus, defendants assert that a practice which offends established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers is an unfair trade practice, unlawful under New

---

1. Months after briefing was concluded under the appellate rules, the Chief Judge permitted addenda to the briefs. In these addenda, defendants contend that the trial court erred in failing to find that the pickup was resold as a consumer good, and that such a finding was necessary for plaintiff to recover a deficiency judgment. Defendants rely on NMSA 1978, Section 58-19-7(J) (Repl.Pamp.1983). Defendants assert the applicability of this statute was raised in their requested findings and conclusions. Defendants are incorrect. The statute is not identified in the requests; no request raised an issue as to resale of the pickup as a consumer good. Defendants are attempting to raise this issue for the first time in the appeal. It will not be considered. NMSA 1978, Civ.App.R. 11.

Mexico law. *See FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 92 S.Ct. 898, 31 L.Ed.2d 170 (1972); *Spiegel, Inc. v. F.T.C.*, 540 F.2d 287 (7th Cir.1976); *Robert's Waikiki U-Drive, Inc. v. Budget Rent-A-Car Systems, Inc.*, 491 F.Supp. 1199 (D.Hawaii 1980). Defendants assert that application of these factors established an unfair or deceptive trade practice in this case.

There are two answers to this contention; one is procedural, one is substantive.

■ The procedural answer is that the trial court was not requested to rule as to an unfair or deceptive trade practice on the basis of federal decisions. In the trial court defendants relied on the unfair or deceptive trade practice defined in Section 57–12–2(C)(14), and the unconscionable trade practice defined in Section 57–12–2(D)(1). Not having requested the trial court to rule on the basis of an unfair trade practice declared in federal decisions, the applicability of federal decisions to this case is not properly before us for review. *See* NMSA 1978, Civ.App.R. 11.

The substantive answer is that defendants fail to recognize the differences between the federal and New Mexico statutes. The federal statute, 15 U.S.C.A. 45(a)(1), declares unfair or deceptive acts to be unlawful; however, that statute does not define unfair or deceptive acts. Because of the lack of definition, federal decisions have supplied a general meaning to the words "unfair or deceptive". *See FTC v. Sperry & Hutchinson Co.; Spiegel, Inc. v. F.T.C.* Similarly, where a state statute fails to define "unfair or deceptive," but does contain a provision similar to Section 57–12–4, a federal court applied the general meaning developed by federal courts. *See Robert's Waikiki U-Drive, Inc. v. Budget Rent-A-Car Systems, Inc.*

■ The New Mexico statute defines the meaning of both unfair or deceptive and unconscionable trade practices. *Compare* § 57–12–2(C) and (D) with 6 HRS §§ 480–1 and 480–3 (1976 Repl.). In addition, Section 57–12–4 states we are to be guided by federal decisions "to the extent possible * * *." Our statute is to be read and given effect as written. *Gonzales v. Oil,*

*Chemical and Atomic Workers International Union, AFL–CIO*, 77 N.M. 61, 419 P.2d 257 (1966). The Legislature has defined "unfair or deceptive" and "unconscionable" trade practices, and this Court may not disregard those definitions in favor of a definition developed by federal courts in interpreting a federal statute. *See Bills v. All-Western Bowling Corporation*, 74 N.M. 430, 394 P.2d 274 (1964). Rather, defendants were required to prove a practice defined by the New Mexico Legislature. *See Fancher v. Board of Commissioners of Grant County*, 28 N.M. 179, 210 P. 237 (1921). Should we rely on federal decisions as to what constitutes an "unfair or deceptive" or "unconscionable" trade practice, we would not be giving effect to the legislative definitions.

### (c) Requirement For an Unfair or Deceptive Practice

The applicable statutory definition in this case, Section 57–12–2(C)(14), reads:

C. "unfair or deceptive trade practice" means any false or misleading * * representation of any kind knowingly made in connection with * * * the collection of debts by any person in the regular course of his trade or commerce, which may, tends to or does deceive or mislead any person and includes:

    *      *      *      *      *      *

(14) * * * failing to state a material fact if doing so deceives or tends to deceive[.]

■ Intent to deceive is not, under the federal law, a prerequisite to finding a trade practice unfair. *Regina Corporation v. F.T.C.*, 322 F.2d 765 (3rd Cir.1963). Such an intent is not stated in the New Mexico statute. Accordingly, applying Section 57–12–4, an intent to deceive is not a requirement under the New Mexico statute.

■ Our statute does, however, require that a representation be "knowingly made". In this case the failure to disclose must have been a knowing nondisclosure. A knowing nondisclosure requires an

awareness of the nondisclosure. *State v. Sanders*, 96 N.M. 138, 628 P.2d 1134 (Ct. App.1981); *See Hays v. Hudson*, 85 N.M. 512, 514 P.2d 31 (1973); *State v. Craig*, 70 N.M. 176, 372 P.2d 128 (1962). There is neither evidence nor inference in the trial transcript of a knowing failure to tell defendants about a potential liability for a deficiency.

The applicable statute also requires a nondisclosure that deceives or tends to deceive. The evidence was that the decision to return the pickup was the decision of the defendants; that decision was made because they could not make the payments. Defendants were not asked to turn in the pickup. Defendants never asked what would happen once the pickup was returned, it never occurred to them. The view that defendants would not be subject to a delinquency once the pickup was returned was no more than an assumption on their part; the question of a possible delinquency never came into the conversation with the credit representative.

The trial court orally remarked that there was a failure of proof as to an unfair or deceptive trade practice; it denied defendants' assumed requested finding as to an unfair or deceptive trade practice in failing to mention a potential liability for a deficiency. This denial was proper on either of the two grounds discussed above—knowing nondisclosure or a nondisclosure that tended to deceive. In so holding we have not overlooked the case on which defendants rely—*Testo v. Russ Dunmire Oldsmobile, Inc.*, 16 Wash.App. 39, 554 P.2d 349 (1976). *Testo* involved the sale of a used car to a purchaser and the withholding, in connection with the sale, of information that the car had been modified into a "race car" and had been used as a race car. *Testo* is not applicable to the facts of this case.

### (d) Requirement For an Unconscionable Practice

■ The applicable statutory definition, Section 57–12–2(D)(1), reads:

D. "unconscionable trade practice" means any act or practice in connection with * * * the collection of debts which to a person's detriment:

(1) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree[.]

We have pointed out that the contract provision, making defendants liable for a deficiency, is not attacked as inapplicable. We have pointed out that defendants assumed there would be no deficiency, but there was an absence of evidence or inference that plaintiff's representatives were in any way responsible for the assumption. There is nothing showing that plaintiff's representative took advantage of defendants. Under the evidence the trial court properly denied the request to find an unconscionable trade practice.

### (e) Causation

Defendants contend they are entitled to damages as provided in Section 57–12–10. However, they do not discuss Section 57–12–10(B) which provides that a private person may recover money damages suffered "as a result of any employment by another person of a method, act or practice declared unlawful by the Unfair Practices Act * * *." Defendants' liability for a deficiency results from their contract. There is neither evidence nor inference of damage resulting from the failure to discuss the potential deficiency in connection with defendants voluntarily returning the pickup.

### Notice to Defendants of Intended Private Sale

■ Once defendants returned the pickup, plaintiff could dispose of it at either public or private proceedings. Disposition having been made at a private sale, plaintiff was required to give defendants "reasonable notification of the time after which" the private sale was to occur. NMSA 1978, § 55–9–504(3) (Cum.Supp. 1983). "Reasonable notification" is not defined in the Secured Transactions portion of the Uniform Commercial Code. *See* Article 9, Uniform Commercial Code. NMSA 1978, Section 55–1–201(26) defines notice in terms of "steps as may be reasonably re-

quired to inform the other in ordinary course * * *." Paragraph 5 of the 1962 Official Comment, compiled under Section 55–9–504 states concerning "reasonable notification": "[A]t a minimum it must be sent in such time that persons entitled to receive it will have sufficient time to take appropriate steps to protect their interests by taking part in the sale or other disposition if they so desire." Reasonable notification is a question of fact determined by the facts and circumstances of each case. *Ridley v. First National Bank in Albuquerque*, 87 N.M. 184, 531 P.2d 607 (Ct. App.1974).

Defendants received notice from plaintiff that the pickup would be sold. The letter, dated October 9, 1981, stated: "[U]nless you make arrangements to redeem the vehicle by paying the amount of $4174.52 by October 28, 1981, then the vehicle will be resold at private sale * * *." The letter also stated that if the pickup was resold, plaintiff "will account to you for the profit or loss on the sale of the vehicle, and will look to you for any loss on the sale."

Defendants do not contend that they did not receive the letter or that they did not have time to take appropriate steps to protect their interests. The pickup was sold on November 5, 1981. Until that date, defendants could have redeemed "the collateral by tendering fulfillment of all obligations secured by the collateral as well as the expenses reasonably incurred by the secured party * * *." NMSA 1978, § 55–9–506. *See Cordova v. Lee Galles Oldsmobile, Inc.*, 100 N.M. 204, 668 P.2d 320 (Ct.App.1983). Defendants did not attempt to redeem; they did nothing.

The defendants claim they were entitled to damages as provided in NMSA 1978, Section 55–9–507(1) on the basis that the notification they received was not reasonable. This claim goes to the redemption amount stated in the notification letter.

The pickup was returned to the credit company on October 1, 1981. The credit company gave plaintiff a notice to repurchase on October 2, 1981, and plaintiff did repurchase. Plaintiff then sent the letter of October 9, 1981, which stated a redemption amount of $4,174.52. A statement of the amount required to redeem is not expressly included in the notification provisions of Section 55–9–504(3), but such a requirement was included in the written sales contract. There is no contention, and no evidence, that the $4,174.52 amount was incorrect on October 9, 1981.

However, the redemption amount was reduced prior to the time of the private sale. Payment was received on a collision insurance claim for damage to the pickup and a rebate was received on the insurance premium. These amounts were credited against the redemption amount so that at the time of the private sale, the amount needed to pay off the contract was $1,842.61.

The trial court found:

On October 9, 1981, Plaintiff mailed to Defendants a notice of their right to redeem and the date after which the vehicle would be resold. The notice did not notify the Defendants of a possible insurance recovery or that any insurance recovery would reduce the pay off. Plaintiff never noticed Defendants that an insurance claim had been made or that an insurance recovery would reduce the pay off.

The trial court also found that defendants never contacted plaintiff about redeeming the vehicle or sought any information from plaintiff regarding the debt. The trial court concluded that the letter of October 9, 1981, was reasonable notice and conformed to Section 55–9–504.

Defendants contend that the trial court erred in its conclusion. They assert that plaintiff either should have notified them of the amounts credited and given them an opportunity to redeem on the basis of the reduced amount, or should have stated in the October 9, 1981, letter that the redemption amount could be reduced by credits for insurance payments and premiums credited. Absent one of these alternatives, defendants assert the notice was not reasonable.

Defendants rely on *Wilmington Trust Co. v. Conner*, 415 A.2d 773 (Del.Supr.

1980). On the facts, *Wilmington Trust* is distinguishable. In *Wilmington Trust* the "present balance" stated in the notice sent "was unduly inflated because of the plaintiff's failure to credit the account with the unearned finance charges and insurance premiums * * *." *Wilmington Trust* held: "[T]his notice, which contained a stated balance that was inflated $654.61 above the amount actually owed, was not 'reasonable notification'". We need not decide whether an error in the redemption amount stated in the notice would require us to hold the notice to be unreasonable; the facts in this case are different. There is no contention that the stated redemption amount of $4,174.52 was incorrect when the October 9, 1981, letter was sent.

*Wilmington Trust* does contain dicta pertinent to the facts in this case. The reduction in the redemption amount in this case occurred after the October 9, 1981, letter was sent. *Wilmington Trust* states: "[A] blatant assertion in the notice that the total amount under the contract was due, without reference to * * * possible rebates, was manifestly unreasonable."

Unreasonableness in this situation is not manifest to us. The above dicta could mean that a notice stating the pay off amount is unreasonable unless the notice also identifies contingencies that may affect the amount. Such a broad meaning is not found in *Wilmington Trust;* the above-quoted dicta is used in the context of rebates required by the Delaware statute. Limiting the dicta to its context, we still decline to adopt a "manifestly" unreasonable approach as a matter of law.

The New Mexico rule is that reasonableness is a factual question dependent on the facts and circumstances of each case. This factual question must be determined in relation to the purpose of the notice. *Wilmington Trust* states three purposes of the notice requirement: (1) it gives the debtor an opportunity to exercise the redemption rights; (2) it affords the debtor an opportunity to seek out a buyer for the collateral; and (3) it allows the debtor to oversee every aspect of the disposition. We assume, but do not decide, that these three stated purposes are a proper state-ment of New Mexico law. There is neither evidence nor inference that any of these purposes were thwarted by the failure of plaintiff's notice to state that any insurance proceeds received after the notice was sent and any rebate of insurance premiums received after the notice was sent would reduce the redemption amount. If defendants had inquired and been given incomplete or false information, that would be a different situation. In the absence of evidence that the purposes of the notice were not met, and defendants having done nothing, the trial court could properly refuse to find that the notice was unreasonable. Our holding is not based on a concept of waiver of notice or estoppel to claim an insufficient notice. *See Nelson v. Monarch Investment Plan of Henderson, Inc.,* 452 S.W.2d 375 (Ky.App.1970); *Commercial Credit Corporation v. Wollgast,* 11 Wash.App. 117, 521 P.2d 1191 (1974). Our holding is that the trial court could properly view the facts as failing to show an unreasonable notice and could properly conclude, on the basis of the facts, that notice was reasonable.

## Whether the Private Sale Was Commercially Reasonable

Plaintiff sued defendants for the deficiency resulting after the private sale. Defendants counterclaimed, alleging the sale was not commercially reasonable. Defendants sought damages in the alternative—either damages proved or the statutory damages stated in Section 55–9–507(1). Without considering a counterclaim, *Clark Leasing Corp. v. White Sands Forest Products, Inc.,* 87 N.M. 451, 535 P.2d 1077 (1975), held that a plaintiff seeking judgment for a deficiency must prove the sale was commercially reasonable. Defendants attack the trial court's ruling that the sale was commercially reasonable. Defendants assert the evidence does not support this ruling and that the trial court erred in denying their requested finding of an unreasonable sale. We need not review the evidence supporting the trial court's ruling and then again review the evidence on which the trial court denied defendants' requested findings. If the trial court's rul-

ing was proper, defendants' requested findings were properly denied. *See McCleskey v. N.C. Ribble Company*, 80 N.M. 345, 455 P.2d 849 (Ct.App.1969). Accordingly, it is unnecessary to consider the interrelationship of plaintiff's burden in connection with its complaint and defendants' burden in connection with its counterclaim.

The trial court concluded: "The resale of the vehicle was performed in a commercially reasonable manner." Defendants assert this conclusion is not supported by a finding of fact and for this reason the conclusion does not support the judgment. We disagree. The evidence going to commercial reasonableness being contradictory, commercial reasonableness was a question of fact. *Clark Leasing Corp.* The trial court's conclusion was also a finding of fact in this case. *Clark v. Duval Corporation*, 82 N.M. 720, 487 P.2d 148 (Ct.App. 1971); *see Goodwin v. Travis*, 58 N.M. 465, 272 P.2d 672 (1954); *Gough v. Famariss Oil and Refining Company*, 83 N.M. 710, 496 P.2d 1106 (Ct.App.1972). The appellate issue is whether there is substantial evidence supporting this finding.

What is commercial reasonableness and how is it determined?

Section 55–9–504(3) states that "every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable." In addition, the disposition must have been in good faith. NMSA 1978, § 55–1–203. *Clark Leasing Corp.* points out that consideration of the method, manner, time, place and terms is another way of questioning whether the price was insufficient and that the importance of these requirements is primarily in protecting against an unfairly low price. *Clark Leasing Corp.* states:

These requirements place upon the creditor the good faith duty to the debtor to use reasonable means to see that a reasonable price is received for the collateral * * *.

\* \* \* \* \* \*

* * * Obviously, each case will turn on its particular facts * * *. Generally, evidence as to every aspect of the sale including the amount of advertising done, normal commercial practices in disposing of particular collateral, the length of time elapsing between repossession and resale, whether deterioration of the collateral has occurred, the number of persons contacted concerning the sale, and even the price obtained, is pertinent.

Plaintiff sold the pickup, at wholesale, for $1,000.00. Defendants do not cite any evidence indicating the price received was an unfairly low price for sale of this damaged vehicle at wholesale. Defendants contend:

(a) A better price could have been obtained by repairing the pickup and selling the repaired vehicle at retail.

(b) Separate from the "price" issue in (a), the decision to sell at wholesale was improper.

(c) Separate from the "decision" issue in (b), the manner of conducting the sale at wholesale was improper.

Our answers to these contentions follow.

### (a) Better price by repairing and selling at retail.

Section 55–9–504(1) states that a secured party after default may sell "the collateral in its then condition or following any commercially reasonable preparation or processing." Plaintiff was not required to repair the pickup.

Section 55–9–507(2) states: "The fact that a better price could have been obtained by a sale * * * in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner." The method of sale involves the normal commercial practice in disposing of the collateral and is an aspect of commercial reasonableness. *Clark Leasing Corp.* However, more than price evidence is required to show the method of disposition is unreasonable.

Quite apart from the above two statutory provisions, evidence concerning repair and price after repair supports the trial court's finding.

It is undisputed that the pickup, when returned, had body damage. The collision

insurance payment was for this damage. Defendants claim that plaintiff should have used the insurance proceeds to repair the pickup. There was also evidence of damage to the engine and drive train, and that the wholesale cost of mechanical repairs would have been in the neighborhood of $2,500.00. Defendants claim the evidence of damage was insufficient because plaintiff did not make a detailed check of the engine. Defendants also claim the cost of repair was insufficient because plaintiff obtained no estimate from anyone as to cost of mechanical repair.

Plaintiff's assistant used car manager had seventeen years of experience in the used car business. He testified that the pickup was started with jumper cables because of a dead battery; "the engine smoked"; on the basis of the smoking "it was going to need a rebuilding". He testified that the pickup, which was a four-wheel drive, needed a driveline because of "[t]he transfer case, mostly". He estimated cost of engine repairs at $1,400.00 "and you cannot hardly start on anything on a four-wheel drive for less than $1,000.00." His estimated cost of repair was based on his experience; "I have repaired quite a few of them."

This assistant used car manager testified that if repairs had been made, his estimate of the retail sales price was "[p]ossibly $4,000.00." He also testified that he made the decision not to repair because "the cost would be much more than the trouble would be worth after it was finished." He explained: 1. "You cannot spend that much money [cost of body repair and mechanical repair] on one and expect it to be retailed to the public and have a happy customer." 2. Disclosure is made of body repair in excess of $350.00. *See* § 57–12–6. He testified that either extensive repair or disclosure of chassis repair made the pickup unsaleable at retail.

The foregoing evidence was before the trial court and could be considered by it; contrary evidence was not controlling because we consider only the evidence supporting the trial court's finding. *Vaughn v. United Nuclear Corp.*, 98 N.M. 481, 650 P.2d 3 (Ct.App.1982). This evidence does not show that a better price could be obtained by repairing the pickup and selling it at retail.

**(b) Decision to sell at wholesale was improper.**

We have held that the evidence as to repair and retail sale did not show that the decision to sell at wholesale was unreasonable. An additional argument of defendants is apparently based on plaintiff's failure to dispose of repossessed vehicles as a separate category. There is evidence that plaintiff wholesales 80 to 100 vehicles each month; that 5 to 6 percent of the wholesaled vehicles are repossessed vehicles, the remainder of the wholesaled vehicles are trade-ins; that a repossessed vehicle is not treated differently than a traded-in vehicle. There is nothing suggesting that in deciding on the method of disposition any distinction should have been made between repossession and trade-ins. The propriety of the decision to dispose of the pickup at wholesale being a factual question, this argument is not pertinent.

**(c) Manner of conducting the sale at wholesale.**

Section 55–9–507(2) provides: "If the secured party * * * has * * * sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner." The assistant used car manager testified that he was familiar with how other dealers dispose of their repossessions and trade-ins and that plaintiff's "policy" of disposition was "[c]onsistent with" other dealers in the area. We agree with defendants that this testimony is insufficient to make Section 55–9–507(2) applicable. The reason is that this testimony does not disclose that the practice of other dealers was a reasonable commercial practice. There is no testimony as to the reasonableness of the practice of other dealers. Thus, Section 55–9–507(2) does not dispose of the question of whether plaintiff's wholesale of the pickup was commercially reasonable.

Defendants seem to contend that the evidence shows that the sale of the pickup, at wholesale, was commercially unreasonable. Defendants rely on the following evidence: the sale was not advertised; plaintiff never advertises sales at wholesale, only sales at retail; plaintiff sells at wholesale only to licensed dealers; there are only three or four wholesale buyers who buy from plaintiff. These items, in themselves, do not compel a finding of unreasonableness. In themselves, they contain no indication that the sales price was insufficient. *See Clark Leasing Corp.* Additional evidence would be needed indicating why this limited method of selling was unreasonable. That evidence is not present.

Defendants also contend that the evidence identified in the preceding paragraph does not support the finding that the sale, at wholesale, was commercially reasonable. This contention need not be answered because other evidence supports the finding.

*Clark Leasing Corp.* states: "Where the sale is conducted in accordance with § 9-504(3) the sum received at sale is evidence of the market value." We have held that the notice sent to defendants was in accordance with Section 55-9-504(3). The notice issue was the only issue as to noncompliance with that section. There was evidence that the sale price was $1,000.00. This evidence was evidence of market value; there is no evidence to the contrary. The evidence of a sale at market value supports the finding that the sale was commercially reasonable.

The judgment for a deficiency of $842.61, which bears interest at the contract rate, is affirmed. Defendants shall bear their appellate costs.

**IT IS SO ORDERED.**

HENDLEY and NEAL, JJ., concur.