753 P.2d 346

**George H. ASHLOCK,
Plaintiff–Appellee,**

v.

**SUNWEST BANK OF ROSWELL, N.A.,
Defendant–Appellant.**

**No. 17068.**

Supreme Court of New Mexico.

March 22, 1988.

Rehearing Denied May 5, 1988.

Atwood, Malone, Mann & Turner, P.A., Rod M. Schumacher, Roswell, for defendant-appellant.

Bozarth, Craig & Vickers, P.C., Marion J. Craig, III, Roswell, for plaintiff-appellee.

OPINION

WALTERS, Justice.

Defendant Sunwest Bank of Roswell (Bank) appeals the trial court's award to plaintiff George H. Ashlock of $20,081.98 in actual damages and $2,962.88 in costs and attorney fees. Ashlock alleged in part, and the trial court so held, that the Bank violated the New Mexico Unfair Practices Act. The Bank's argument on appeal is that the trial court's decision is supported neither by the facts nor the findings. We disagree and affirm the trial court.

In 1981, Ashlock received a mail solicitation from the Bank inviting him to open a

new kind of high interest-bearing checking account. Upon making inquiries at the Bank, Ashlock transferred $27,324 from his savings account to the new interest-bearing account. At that time Ashlock believed he had an agreement with the Bank whereby interest would be paid regularly on the funds in the new account. Because of an error at the Bank, however, no interest was paid on or credited to Ashlock's account. The non-payment came to Ashlock's attention in 1986 when he went to the Bank on another matter and a bank employee then discovered that his account had never drawn interest. The employee assured Ashlock that the account would start to draw interest that night, and Ashlock, dissatisfied, met several times thereafter with Bank officials attempting to persuade them to pay back interest due on his account. Those efforts failed; Ashlock's suit against the Bank followed.

According to the Bank, the trial court failed to enter necessary findings of fact to sustain the judgment. We have said that "findings are to be liberally construed in support of a judgment, and such findings are sufficient if a fair consideration of all of them taken together justifies the trial court's judgment." *State ex rel. Goodmans Office Furnishings, Inc. v. Page & Wirtz Constr. Co.,* 102 N.M. 22, 24, 690 P.2d 1016, 1018 (1984). Here, the trial court found that the Bank advertised its interest-bearing checking account and suggested that savings funds be transferred to such accounts; Ashlock directed the Bank to so transfer his funds; the transfer of $27,324 was completed, but the Bank failed to transfer the sum to an interest-bearing checking account; no interest was paid until the error was discovered in January 1986; the Bank did not advise Ashlock that his new account would not bear interest although the Bank knew that Ashlock believed that it would; the account would have earned an additional $20,081.98 if interest had been paid and kept in the account; the Bank refused to pay Ashlock the back interest on his account.

Four elements must be established to invoke the Unfair Practices Act. First, the complaining party must show that the par-

ty charged made an "oral or written statement, visual description or other representation * * *" that was either false or misleading. Second, the false or misleading representation must have been "knowingly made in connection with the sale, lease, rental or loan of goods or services in the extension of credit or ... collection of debts * * *." Third, the conduct complained of must have occurred in the regular course of the representers trade or commerce. And, fourth, the representation must have been of the type that "may, tends to or does, deceive or mislead any person." NMSA 1978, § 57–12–2(C) (Repl. Pamp.1987). Descriptions of unfair or deceptive trade practices include *"failure to deliver the quality * * * of * * * services contracted for."* Id. § 57–12–2(C)(17). (Emphasis added.)

The Bank argues that the statute requires the statement to be made with the intent to mislead. Such an interpretation imposes an element not provided for by the legislature. Had the legislature wished intent to deceive to be an essential element of the offense, it would have so specified. *Richardson Ford Sales, Inc. v. Johnson,* 100 N.M. 779, 676 P.2d 1344 (Ct.App.1984). We may infer from the language of the statute that the legislature did not enact such a requirement of intent, because it clearly provides that "[w]here the trier of fact finds that the party charged with an unfair or deceptive trade practice or an unconscionable trade practice has *willfully* engaged in the trade practice, the court *may* award up to three times actual damages * * *." NMSA 1978, § 57–12–10(B). (Emphasis ours.) That permissive language leads us to conclude that it was within the legislature's contemplation that in some cases, but not all, the false or misleading statement would be made at the outset with the intent to deceive, and in such cases triple damages would not be unwarranted. Conversely, it suggests also that the legislature anticipated other situations wherein the statement would not be intentionally unfair or deceptive, but could become a false or misleading representa-

tion at some time during the life of the transaction.

Additionally, an interpretation that would require the represener to intend to deceive the consumer at the time the representation is made would unwisely open the door to condonation of bait-and-switch trade practices. For example, a business could advertise specific services or goods, obtain orders and payments, yet substitute other services or goods if for some reason the advertised services became onerous or the advertised goods became unavailable. If purity of intent at the moment of making the representation were a complete defense, without regard to the conduct of the representing party before the deal is consummated, the Act would become toothless, and a change of heart at time of delivery of the services or goods would render Section 57–12–2(C)(17) meaningless.

Our construction is in accord with the legislature's declaration that "[t]he relief provided * * * [by the Unfair Practices Act] is in addition to remedies otherwise available against the same conduct under the common law or other statutes of this state." NMSA 1978, § 57–12–10(D) (Repl. Pamp.1987). By recognizing that the Act applies to all misleading or deceptive statements, whether intentionally or unintentionally made, we ensure that the Unfair Practices Act lends the protection of its broad application to innocent consumers.

■ In the instant case the Bank advertised through the mail and in the newspapers that it would provide an interest-bearing account. The advertisements were representations knowingly made by the Bank in connection with the offering of a service. As a direct result of the advertising and of subsequent discussions with a Bank employee, Ashlock transferred monies into an account for the express purpose of earning such interest. Ashlock sued because of the Bank's failure to pay interest as advertised and as was indicated to him by the Bank when his funds were transferred. The entire series of acts clearly occurred in the regular course of the Bank's business. The Bank's refusal to remedy the situation patently resulted in its failure to deliver

the quality of services contracted for, contrary to Section 57–12–2(C)(17).

The Bank urges that this was an isolated occurrence and, consequently, not a violation of the Unfair Practices Act. It cites *Klein v. Bronstein*, 39 B.R. 20 (Bankr.D.N. M.1984) in support. *Klein*, a memorandum opinion, is by its very nature without precedential value. Nevertheless, and to clarify New Mexico law, we disagree with *Klein* to the extent that it holds the Unfair Practices Act applies only to recurring conduct and not to an isolated act. We agree that the language of a statute must be construed so that no part of the statute is rendered surplusage. *Klein*, 30 Bankr. at 22. However, we do not render the statute's language regarding statements made in the regular course of trade or commerce as surplusage by holding the Act applicable to any occurrence. The statute makes no distinction between single or multiple instances of prohibited conduct, and we decline to do so.

■ Lastly, the Bank argues that because it is organized and regulated under federal law and because federal law exists pertaining to unfair or deceptive practices of banks, the doctrine of preemption applies and the Bank is thereby exempt from application of the New Mexico Unfair Practices Act. Although this issue is raised for the first time in this court, whether or not state law is preempted by federal legislation in a particular area is an issue directed toward subject matter jurisdiction and therefore may be raised at any time in the course of the proceedings. *Perea v. Baca*, 94 N.M. 624, 614 P.2d 541 (1980). Accordingly, we consider the issue. SCRA 1986, 12–216(B).

■ The mere existence of federal legislation in an area of law also addressed by state legislation, without more, is not enough to show preemption. *See Morse v. Mutual Federal Savings and Loan Ass'n of Whitman*, 536 F.Supp. 1271 (D.Mass. 1982); *City of Cleveland v. Public Utilities Comm'n of Ohio*, 64 Ohio St.2d 209, 414 N.E.2d 718 (1980). The thrust of those cases and others cited therein is that, under the supremacy clause of the United States

Constitution, state law is superseded when state and federal law conflict. The conflict need not be direct for the doctrine of preemption to apply. *Morse*, 536 F.Supp. at 1280. Additionally, preemption occurs when Congress legislates within a particular field and explicitly or implicitly excludes the states from legislating in that area. When the exclusion of the state is not explicitly articulated by Congress, the courts look at several factors to determine if Congress has implicitly preempted the area. Those factors include: the intent of Congress as disclosed by the statute or its legislative history; the pervasiveness of the federal regulatory scheme; the demand for exclusive federal regulation by the nature of the statutory subject matter; the creation of an obstacle to congressional objectives by enactment of the state law. *City of Cleveland*, 64 Ohio St.2d at 213, 414 N.E.2d at 721. None of those additional considerations exist here.

■ With respect to the primary tests, the Bank is unable to convince us that the state statute and federal legislation are in conflict. Likewise, although the Bank cites 15 U.S.C. Section 57a(f)(2)(A)(Supp.1987) as supporting its assertion that federal law applies to national banks to the exclusion of similar state statutes, we find no such language there. 15 U.S.C. Section 57a(f) is an enabling statute directing the Board of Governors to regulate banks, including those nationally organized, in order to prevent unfair trade practices, but there is nothing in its language explicitly excluding enactment of a similar state statute. Nor are we persuaded that the federal statute by implication preempts our Unfair Practices Act. Indeed, 15 U.S.C. Section 57b(e) provides that "[r]emedies provided in this section are in addition to, and not in lieu of, any other remedy or right of action provided by State or Federal law." We are satisfied that the federal statute has not preempted the New Mexico Act.

In connection with its argument of federal control, the Bank asserts that the Unfair Practices act itself exempts the Bank under NMSA 1978, Section 57–12–7 (Repl.Pamp. 1987). Such a reading of that section,

which provides that "nothing in the Unfair Practices Act shall apply to actions or transactions *permitted* under laws administered by a regulatory body of the state of New Mexico or the United States" (emphasis ours), is antiphrasis at its best. Initially, we have held that preemption does not exist. Secondly, our attention has not been directed to any federal statute or regulation that would evidence the intention of Congress or the federal regulatory branch to regulate, to any extent, the bank's failure to deliver goods or services as promised.

The court's undisputed findings of fact, read together, sufficiently establish the necessary facts to satisfy the requirements of the New Mexico Unfair Practices Act. The trial court's judgment is therefore AFFIRMED.

RANSOM, J., concurs.

STOWERS, J. (specially concurs).

STOWERS, Justice, specially concurring.

I would affirm the judgment of the trial court but for reasons other than those stated in the majority opinion. While I agree that Ashlock is entitled to recovery under a breach of contract theory, I do not agree that substantial evidence was presented at trial from which the court could have found a breach of the New Mexico Unfair Practices Act.

The Bank's conduct herein did not violate the requirements of the Act. Under this Act, a false or misleading representation to a consumer must be "knowingly made." NMSA 1978, § 57–12–2(C) (Repl.Pamp. 1987); *Richardson Ford Sales, Inc. v. Johnson*, 100 N.M. 779, 782, 676 P.2d 1344, 1347 (Ct.App.1984). No such finding was made.

I would, therefore, affirm the trial court on the basis that the Bank breached its contract with Ashlock by failing to pay the interest to which he was entitled.