This memorandum opinion was not selected for publication in the New Mexico Reports.  Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**P.J. MILETA and WENDY MILETA**,

    Plaintiffs-Appellants,

v.                                **NO. 28,918**

**ROBERT R. JEFFRYES**,

    Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF COLFAX COUNTY**
**Sam B. Sanchez, District Judge**

Kelley Law Offices
Cody K. Kelley
Charlotte L. Itoh
Albuquerque, NM

L. Helen Bennett
Albuquerque, NM

for Appellants

Robin C. Blair
Raton, NM

for Appellee

**MEMORANDUM OPINION**

**VANZI, Judge.**

P.J. and Wendy Mileta (Plaintiffs) appeal from the district court's judgment granting a directed verdict in favor of Robert Jeffryes (Defendant) on Plaintiffs' claims and in favor of Defendant on his counterclaim. Plaintiffs also appeal the district court's entry of a decree of foreclosure, when the junior lienholders and mortgagees had not received notice of the foreclosure, and the district court's award of attorney fees to Defendant. We affirm in part and reverse in part.

**BACKGROUND**

This matter arises out of a dispute concerning the construction of Plaintiffs' home by Defendant. The parties agree on the following facts. In September 2004, Plaintiffs entered into an oral contract with Defendant for the building of their residence on property that Plaintiffs owned in Raton, New Mexico. Defendant has been a licensed general contractor in New Mexico for about 32 years. Defendant started construction on Plaintiffs' home on or about October 14, 2004. Plaintiffs obtained a construction loan and made payments to Defendant during the period of October 2004 to March 2005. Defendant stopped working on the house and left the project unfinished in early 2006 when Plaintiffs failed to pay Defendant additional money Defendant claimed was due and owing. Defendant then filed a materialmen's lien on the property in February 2006.

Approximately a year later, in March 2007, Plaintiffs filed their complaint in this matter against Defendant alleging fraud, breach of contract, breach of the duty of good faith and fair dealing, violations of the Unfair Practices Act (UPA), and prima facie tort. Defendant filed an answer and counterclaimed for breach of contract and foreclosure of lien, as well as for "assumpsit on quantum meruit" and promissory estoppel.

A jury trial in this case began on March 3, 2008. Plaintiffs called five witnesses, including Defendant and both Plaintiffs, to testify. At the close of Plaintiffs' case, Defendant's counsel made an oral motion for judgment as a matter of law on each of Plaintiffs' claims pursuant to Rule 1-050(A)(1) NMRA. The district court granted Defendant's motion for directed verdict on all counts, awarded judgment to Defendant in the amount of $38,576.96 and told Defendant's counsel to submit his affidavit for attorney fees. No other evidence was presented. The final judgment and decree of foreclosure was filed on July 23, 2008. In that order, the district court dismissed Plaintiffs' claims and granted directed verdict on Defendant's counterclaim for a decree foreclosing his mechanic's lien. In addition, the district court awarded all fees and costs requested by Defendant, including fees incurred in defending against Plaintiffs' claims.

On appeal, Plaintiffs contend that the district court erred by (1) granting a directed verdict on all Plaintiffs' claims, (2) granting judgment as a matter of law on Defendant's counterclaim, (3) awarding Defendant attorney fees, and (4) entering a decree of foreclosure when junior lienholders and mortgagees on the property had not received notice of the foreclosure.

**DISCUSSION**

**The District Court's Directed Verdict on Plaintiffs' Claims**

We review de novo the district court's decision on a motion for a directed verdict. *McNeill v. Burlington Res. Oil & Gas Co.*, 2008-NMSC-022, ¶ 36, 143 N.M. 740, 182 P.3d 121. "A directed verdict is appropriate only when there are no true issues of fact to be presented to a jury." *Sunwest Bank of Clovis, N.A. v. Garrett*, 113 N.M. 112, 115, 823 P.2d 912, 915 (1992). "Directed verdicts are not favored and should only be granted when a jury could not logically and reasonably reach any other conclusion." *In re Estate of Kimble*, 117 N.M. 258, 260, 871 P.2d 22, 24 (Ct. App. 1994). A reviewing court must consider all evidence, and any conflicts in the evidence or reasonable interpretations of the evidence are to be viewed in favor of the party resisting the directed verdict. *Garrett*, 113 N.M. at 115, 823 P.2d at 915. Therefore, "if reasonable minds can differ on the conclusion to be reached under the evidence or the permissible inferences to be drawn therefrom, the question is one for

the jury and it is error to direct a verdict." *Melnick v. State Farm Mut. Auto. Ins. Co.*, 106 N.M. 726, 728, 749 P.2d 1105, 1007 (1988).

Plaintiffs contend that the district court improperly directed a verdict on their claims for breach of contract, duty of good faith and fair dealing, fraud, and UPA. We address the district court's ruling as to each claim.

**Breach of Contract**

Although the district court in this case expressed concern regarding whether the parties entered into a valid contract, the parties conceded at trial that an agreement existed between them for Defendant to build Plaintiffs' home. Indeed, both Plaintiffs and Defendant advanced claims for breach of an oral contract in the complaint and counterclaim. At issue, therefore, was the parties' understanding about the terms and duties of performance under the contract and whether the contract was breached.

Defendant does not dispute that the question of a breach of contract is a question of fact. Rather, he argues that the district court properly directed a verdict on Plaintiffs' breach of contract claim because there were no specifications or allowances, there was no way he could know how much it would cost to build the house, and because he was not in control of the costs. Defendant asserts that he performed in accordance with Plaintiffs' requests until they refused to pay him, and he then stopped working. Notwithstanding Defendant's version of the facts, however,

5

we must view a directed verdict as appropriate only when there are no issues of fact to be presented to the jury, and we view all evidence in favor of the party resisting the motion. *Garrett*, 113 N.M. at 115, 823 P.2d at 915.

The crux of the issue here is whether the oral agreement that the parties entered into was a cost plus ten percent contract or a fixed-fee contract. At trial, Defendant testified that he was entering into an oral agreement and stated that the agreement was a cost plus ten percent, fixed-fee contract. He later clarified that he had in fact entered into a cost plus ten percent contract, which is different from a fixed-fee contract. Defendant usually used written contracts for large construction projects, but he did not use one in this case in part because he had had negative experiences with such contracts in the past.

Plaintiffs testified that they entered into an oral agreement with Defendant, and they further testified that Defendant agreed to build the house for $282,000 and that the house would not cost more than $300,000. Defendant provided Plaintiffs with cost breakdowns of $252,000 and $282,000 for the construction of the home. According to Plaintiff P.J. Mileta, Defendant never had any conversation with Plaintiffs concerning a cost plus ten percent contract.

The evidence presented at trial concerning the history of the parties' relationship with respect to the construction of the home and the formation of the

contract follows. P.J. Mileta testified that shortly after he purchased the lot, he started having conversations with Defendant about construction of the home. Plaintiffs met with Defendant numerous times before they asked him to build the house, and they "basically talked about everything from pre-fabricated homes to this concrete block[-]type construction." Defendant helped with part of the design of the house. Eventually, Plaintiffs had an architectural group draw up plans for the house, which they showed to Defendant. Defendant went with Plaintiffs to at least one meeting with the architect in Colorado.

Before asking Defendant to build their house, Plaintiffs received several estimates from Defendant, and each included a contractor fee of roughly ten percent of the total construction cost, which varied from $214,000 to $268,000. Defendant finally agreed that he would build the house for $282,000, and with that understanding, P.J. Mileta testified that he went to the bank and secured a construction loan for $228,000, although he never expected to build the house for that amount. In March 2005, Plaintiffs increased the loan amount. Plaintiffs made a total of ten payments to Defendant. The last payment in the amount of $10,000 was made on October 4, 2005. The total amount paid to Defendant was $294,278. In about the spring of 2005, Plaintiffs became aware that they would not have sufficient funds to

finish the construction of the home, and at the end of 2005, Defendant stopped working.

As we have noted, Defendant is a licensed contractor with 32 years experience in construction. Neither of the Plaintiffs are licensed contractors, and Ms. Mileta has no construction experience at all. Although Defendant testified that he entered into a cost plus ten percent contract with Plaintiffs, he also testified that he did not always submit the costs or invoices to Plaintiffs, and he did not add the ten percent on the invoices he did submit to them. Further, Defendant never explained to Plaintiffs how the costs would be determined, including with respect to labor. According to Plaintiffs, Defendant never had a conversation with them concerning a cost plus ten percent contract. Rather, he agreed to build their house for a fixed fee of $282,000.

Based on the evidence presented, we conclude that the testimony of Plaintiffs raises a sufficient question of fact as to their understanding of the agreement with Defendant. If the jury believed that Defendant agreed to build Plaintiffs home for $282,000, and not more than $300,000, that he was paid $294,278, and that he did not complete the construction for the amount agreed upon, it could have found that Defendant breached the contract. We therefore hold that the district court erred in granting a directed verdict on this issue, and we remand for a retrial on the merits of Plaintiffs' breach of contract claim.

**Duty of Good Faith and Fair Dealing**

Plaintiffs contend that the district court erred by directing a verdict on their claim for breach of the duty of good faith and fair dealing. Our courts have long recognized that "every contract imposes upon the parties a duty of good faith and fair dealing in its performance and enforcement." *Watson Truck & Supply Co. v. Males*, 111 N.M. 57, 60, 801 P.2d 639, 642 (1990). "[T]he implied covenant of good faith and fair dealing requires that neither party do anything that will injure the rights of the other to receive the benefit of their agreement. Denying a party its rights to those benefits will breach the duty of good faith implicit in the contract." *Bourgeous v. Horizon Healthcare Corp.*, 117 N.M. 434, 438, 872 P.2d 852, 856 (1994) (citation omitted). Whether there has been a breach of the covenant of good faith and fair dealing is a factual inquiry that focuses on the contract and what the parties agreed to. *See id.* at 439, 872 P.2d at 857.

Having reversed the district court's directed verdict on the breach of contract claim, and because claims for breach of contract and good faith and fair dealing are closely intertwined, it follows that we must reverse and remand for a jury trial on this issue as well.

9

**Fraud**

Plaintiffs contend that the district court erred by granting a directed verdict dismissing their claim that Defendant committed fraud by making a false representation that the house would not cost more than $300,000 to build and that Defendant never disclosed "what his costs would entail in a meaningful fashion."

An actionable claim of fraud requires proof of a false statement made with an intent to deceive and to induce reliance on the misrepresentation. *See* UJI 13-1633 NMRA (describing the elements of fraud); *Cain v. Champion Window Co. of Albuquerque, LLC*, 2007-NMCA-085, ¶ 22, 142 N.M. 209, 164 P.3d 90 (stating that, to recover in fraud, a claimant must establish that he or she suffered damages that were proximately caused by justifiable reliance on a misrepresentation). Further, unlike most cases which involve a "preponderance of the evidence" standard, fraud claims require proof by "clear and convincing evidence." UJI 13-1633; *see, e.g.*, NMSA 1978, § 7-1-53(B) (2003); NMSA 1978 § 22-10A-25(J) (2003). "When the standard is clear and convincing evidence, the question for the trial judge is whether there is sufficient evidence introduced from which a reasonable juror could reach an 'abiding conviction' as to the truth of the plaintiff's claim." *Chavez v. Manville Prod. Corp.*, 108 N.M. 643, 648, 777 P.2d 371, 376 (1989).

In this case, we believe that the evidence presented by Plaintiffs did not meet this threshold standard and, therefore, entry of a directed verdict against them was not in error. We recognize that clear and convincing evidence may be circumstantial in nature. *See Ledbetter v. Webb*, 103 N.M. 597, 601, 711 P.2d 874, 878 (1985); *Sauter v. St. Michael's Coll.*, 70 N.M. 380, 385, 374 P.2d 134, 138 (1962). However, for the reasons that follow, Plaintiffs have not provided either direct or circumstantial evidence in support of their claim.

Plaintiffs essentially make two assertions in support of their fraud claim. First, Plaintiffs contend that Defendant said the construction of their house would cost $282,000 and not more than $300,000. They allege that whether Defendant made this statement is a question of fact, and whether this statement was true or false is for the jury to decide. Second, Plaintiffs argue that Defendant used the money he was paid to pay bills and fund projects other than the building of their home and that this is circumstantial evidence of their fraud claim. We are unpersuaded.

The facts show that even if Defendant's statement concerning the cost of building the home was inaccurate and the falsity of the representation was known to Defendant, thereby meeting the first two prongs of a fraud claim, there was no evidence presented at trial that Defendant told Plaintiffs he could build their house for under $300,000 with the intent to deceive them. Plaintiffs assert that the evidence

11

showing that Defendant commingled the monies Plaintiffs paid him in his personal account and that he used those monies to pay personal bills and for projects unrelated to Plaintiffs' home provides circumstantial evidence that Defendant intended to deceive Plaintiffs. As an initial matter, we note that Plaintiffs' evidence relating to Defendant's use of Plaintiffs' money to pay bills is based, for the most part, on exhibits which are not part of the record on appeal. It is the duty of the appellant to provide a record adequate to review the issues on appeal. *Dillard v. Dillard*, 104 N.M. 763, 765, 727 P.2d 71, 73 (Ct. App. 1986). "Upon a doubtful or deficient record, every presumption is indulged in favor of the correctness and regularity of the trial court's decision, and the appellate court will indulge in reasonable presumptions in support of the order entered." *Reeves v. Wimberly*, 107 N.M. 231, 236, 755 P.2d 75, 80 (Ct. App. 1988). Notwithstanding the deficient record, however, Plaintiffs did not offer any evidence that the parties ever agreed that Defendant would keep a separate account for the construction of the house, nor have they pointed to any legal duty requiring Defendant to do so. Plaintiffs here did not introduce a minimum quantum of evidence from which the jury could reasonably find in their favor under the applicable standard of proof. We affirm the district court's grant of directed verdict on Plaintiffs' fraud claim.

**Unfair Practices Act**

Plaintiffs also argue that the district court erred by granting a directed verdict dismissing their claim that Defendant violated the UPA, NMSA 1978, §§ 57-12-1 through -22 (1967, as amended through 2009). We have said that "[g]enerally, the [UPA] is intended to provide a private remedy for individuals who suffer pecuniary harm for conduct involving either misleading identification of a business or goods, or false or deceptive advertising." *Parker v. E.I. Du Pont de Nemours & Co.*, 121 N.M. 120, 132, 909 P.2d 1, 13 (Ct. App. 1995). Plaintiffs here allege that the evidence at trial supported each element of their UPA claim, which requires that a defendant (1) issued a false statement, (2) made the statement in connection with the sale of services and knowing the statement was false, (3) made the statement in the regular course of trade or commerce, and (4) the statement is one that may, tend to, or did deceive or mislead any person. Section 57-12-2(D). **[BIC 17-18]** We disagree for two reasons.

First, an essential element of Plaintiffs' claim regarding an "unfair or deceptive trade practice" under the UPA is that a false or misleading oral or written statement was made in connection with the sale of services. *Id.*; *see also Ashlock v. Sunwest Bank of Roswell, N.A.*, 107 N.M. 100, 101, 753 P.2d 346, 347 (1988), *overruled on other grounds by Gonzales v. Surgidev Corp.*, 120 N.M. 133, 140, 899 P.2d 576, 583 (1995). The subjective belief of the party receiving the information is not sufficient

13

to establish a violation of the UPA. *See Page & Wirtz Constr. Co. v. Solomon*, 110 N.M. 206, 210, 794 P.2d 349, 353 (1990). The only evidence concerning the false or misleading statement is Plaintiffs' assertion that "[t]he evidence outlined above, derived from [Defendant's] own testimony . . . as well as that of both Wendy Mileta . . . and P.J. Mileta . . . supports each element of . . . Plaintiffs' UPA claim." **[BIC 18]** Plaintiffs have failed to recite the specific evidence bearing on this issue, and we do not search the record to determine if there is sufficient evidence to support their claim. *See Doe v. City of Albuquerque*, 96 N.M. 433, 437, 631 P.2d 728, 732 (Ct. App. 1981). Moreover, our cursory review of the record does not indicate that the district court's decision to grant a directed verdict on this claim was in error.

Second, we turn to Defendant's argument that the district court properly granted a directed verdict because the UPA does not apply in this case. Defendant cites to *McElhannon v. Ford*, 2003-NMCA-091, ¶¶ 16-17, 134 N.M. 124, 73 P.3d 827, where we held that the UPA does not apply to cases where goods and services are combined to create a structure that is permanently affixed realty. Plaintiffs concede that if *McElhannon* is applied in this case, their claim would necessarily fail. They appear to argue, however, that because this case did not involve the sale of a finished house, but materials to build the home, and because Defendant did not complete the project, *McElhannon* does not apply. Although Plaintiffs say *McElhannon* is distinguishable,

14

they fail to develop their argument or provide any authority to support the proposition that purchase of materials and failure to complete a construction project can constitute a claim under the UPA. As a result, we decline to review this argument further. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (reasoning that this Court will not review undeveloped and unclear arguments on appeal). We therefore conclude that the district court did not err in granting a directed verdict on Plaintiffs' UPA claim.

Because we decide that the directed verdict was properly granted as a matter of law, we do not reach Plaintiffs' argument that the district court's decision denying them the opportunity to present evidence of Defendant's conduct on other construction projects was an abuse of discretion.

**Prima Facie Tort**

To survive a motion for directed verdict on a prima facie tort claim, Plaintiffs must submit evidence from which a jury could find that (1) Defendant committed an intentional, lawful act; (2) Defendant committed the act with an intent to injure Plaintiffs; (3) Plaintiffs actually suffered an injury; and (4) there was an absence of justification for Defendant's acts. *See Schmitz v. Smentowski*, 109 N.M. 386, 394, 785 P.2d 726, 734 (1990).

15

According to Plaintiffs, sufficient evidence was introduced at trial that Defendant "charged significantly more than was justified by either the labor or the materials put into the home, contrary to the parties' oral agreement, used monies paid by [Plaintiffs] to pay other bills and projects, and failed to provide revised estimates and accounting in a timely manner." This evidence, Plaintiffs argue, is sufficient to raise reasonable inferences regarding Defendant's intent to injure Plaintiffs' interest in building their home as cost-effectively as possible. We disagree and conclude that the district court's entry of a directed verdict was appropriate on this claim.

Plaintiffs have not cited to any part of the record, nor have they provided any evidentiary basis from which a reasonable jury could find that Defendant "charged significantly more than was justified." In addition, Plaintiffs have failed to cite to any portion of the record that establishes that Defendant improperly used monies and failed to provide revised estimates in contravention of an agreement or requirement to do so. Where a party fails to cite any portion of the record to support its factual allegations, this Court need not consider its argument on appeal. *See Santa Fe Exploration Co. v. Oil Conservation Comm'n*, 114 N.M. 103, 108, 835 P.2d 819, 824 (1992). The prima facie tort claim was properly dismissed.

**Defendant's Counterclaim, Attorney Fees, and Decree of Foreclosure**

Defendant contends that once Plaintiffs' legal claims were dismissed, the district court properly awarded judgment in favor of Defendant on the equitable issues set forth in his counterclaims. However, because we reverse and remand for a trial on Plaintiffs' claims for breach of contract and good faith and fair dealing, we must reverse the district court's order granting Defendant's motion for judgment as a matter of law in favor of Defendant on Defendant's counterclaims as well. Defendant's counterclaim on the equitable issues can be decided by the court after the jury's verdict on Plaintiffs' claims. Similarly, we reverse the district court's award of attorney fees and judgment regarding costs, as well as its order entering the decree of foreclosure on the ground that it is also premature to address these issues pending a verdict on Plaintiffs' claims for breach of contract and breach of the duty of good faith and fair dealing.

**CONCLUSION**

For the foregoing reasons, we reverse the district court's grant of directed verdict on Plaintiffs' breach of contract and breach of good faith and fair dealing claims. We also reverse the district court's grant of judgment as a matter of law on Defendant's counterclaim, as well as the award of Defendant's attorney fees and the

17

entry of the decree of foreclosure.  We affirm the district court's entry of directed verdict on Plaintiffs' claims for fraud, violations of the UPA, and prima facie tort.

**IT IS SO ORDERED.**


_____

**LINDA M. VANZI, Judge**

**WE CONCUR:**


_____

**JAMES J. WECHSLER, Judge**


_____

**TIMOTHY L. GARCIA, Judge**