1998-NMCA-017

953 P.2d 722

Kathleen ECKHARDT, Plaintiff–
Appellant/Cross–Appellee,

v.

CHARTER HOSPITAL OF ALBUQUER-
QUE, INC., A New Mexico Corporation,
Defendant–Appellee/Cross–Appellant,

William Kent McGregor, Defendant,

And Courtney Cook, Defendant–Appellee.

No. 17116.

Court of Appeals of New Mexico.

Nov. 12, 1997.

552

Susan Weckesser, Santa Fe, Daniel W. Shapiro, Shapiro & Bettinger, P.C., Albuquerque, for Appellant.

Earl Norris, Hinkle, Cox, Eaton, Coffield & Hensley, L.L.P., Albuquerque, for Appellees.

*OPINION*

ARMIJO, Judge.

1. This appeal and cross appeal arise out of a civil action filed by Kathleen Eckhardt (Plaintiff) against Charter Hospital of Albuquerque (Charter), William Kent McGregor (McGregor), and Courtney Cook (Cook) for damages sustained as a result of a sexual assault on Plaintiff by McGregor on July 16, 1987, in Santa Fe, New Mexico. Plaintiff alleged that she was assaulted while she was receiving counseling from McGregor, a certified social worker, at the offices of the Charter Counseling Center of Santa Fe (CCC). Cook was the director of the CCC, a facility owned by Charter. The trial court entered a default judgment against McGregor, and he is not a party to this appeal.

2. The case was tried before a jury which awarded Plaintiff the sum of $132,000 against Charter on her claim of negligent selection and supervision of McGregor; the sum of $70,000 against Charter on her claim of fraudulent misrepresentation; and the sum of $80,000 against Charter on her claim of negligent misrepresentation.

3. Plaintiff appeals from the trial court's order granting a directed verdict on her claims for punitive damages, wrongful disclosure, and violation of the Unfair Practices Act. Plaintiff also challenges the trial court's disclosure to the jury of a $1 million default judgment award entered against McGregor. Charter cross-appeals from the trial court's order denying its motion for a directed verdict and the trial court's entry of judgment for separate damage awards for fraudulent misrepresentation and negligent misrepresentation based upon the same conduct. Charter also challenges the trial court's failure to decide Defendant's amended motion for summary judgment and rule on the legal question of whether Charter owed a duty to Plaintiff as a Charter patient.

4. For the reasons discussed below, we affirm the judgment with respect to Plaintiff's claims against Charter for negligent misrepresentation and negligent selection and supervision of McGregor. We affirm the trial court's rulings with respect to summary judgment motions filed by the parties as they related to the claims set forth in the Second Amended Complaint. We affirm the trial court's rulings with respect to the directed verdicts on the claims for punitive damages and violation of the Unfair Practices Act. We reverse the judgment on Plaintiff's claim of fraudulent misrepresentation, and reverse the trial court's decision to grant a directed verdict dismissing Plaintiff's claim against Cook for wrongful disclosure. We determine that the trial court erred in disclosing to the jury the nature and amount of the default judgment entered against McGregor.

**I. BACKGROUND**

5. The procedural posture of this case is complex. The initial complaint was filed on

March 15, 1990. Plaintiff sought compensatory and punitive damages from McGregor for wanton and willful misconduct, battery, and intentional infliction of emotional distress. She sought compensatory and punitive damages from Charter under various theories, not all of which are relevant to this appeal. Plaintiff alleged that Cook divulged confidential information to a third party (Plaintiff's husband) and that she suffered damages as a result.

6. During the pendency of the present case, Charter filed a separate declaratory judgment action to determine if Charter had a duty to defend McGregor; the two actions were consolidated. The present (tort) action was stayed pending disposition of the declaratory judgment action which was tried on August 12, 1991. A judgment was filed on December 17, 1991, which determined that McGregor was an independent contractor. No appeal of that judgment followed.

7. Based on the declaratory judgment, Charter moved for summary judgment on all counts against it in the tort action. Plaintiff was granted leave to amend her complaint. The trial court ultimately granted summary judgment in favor of the Defendants on certain issues, and Plaintiff appealed to the Supreme Court. On August 8, 1994, the Supreme Court affirmed the district court's dismissal of Plaintiff's claims that McGregor was an employee and apparent employee of Charter and reversed the district court's dismissal of Plaintiff's negligent selection and supervision claim.

8. On October 26, 1994, the trial court granted Plaintiff's motion to file a Second Amended Complaint, in which Plaintiff stated the claims which relate to the present appeal. Counts I, II and III related to McGregor and are not germane to this appeal because, during a pretrial proceeding, the trial court entered a default judgment against McGregor as to liability due to his failure to appear at the proceedings. Determination of the amount of damages to be assessed against him was left to a later time.

9. The remaining claims, all relating to Charter and Cook, can be summarized as follows. Count IV alleged that Charter was negligent in its employment and supervision of McGregor and in its failure to terminate him. Count V alleged that Charter violated the Unfair Practices Act by engaging in false advertising in its promotional materials with regard to the quality of its services and its affiliation with McGregor. Count VI alleged that Charter made fraudulent or, alternatively, negligent misrepresentations in its advertising and in other statements indicating that McGregor was its employee. Count VII alleged that Charter and Cook breached their duty of confidentiality by intentionally and negligently disclosing confidential information to Plaintiff's husband. The information related to her history of spousal abuse.

10. Plaintiff moved for summary judgment as to Count IV on April 6, 1995, and Charter filed an amended motion for summary judgment on all outstanding claims. The trial court heard the motions for summary judgment on June 5, 1995, and denied both motions. Voir dire began on June 20, 1995, with the trial commencing on July 25, 1995.

11. During the trial, Plaintiff requested that the trial court assess damages against McGregor. The trial court entered an award of $500,000 in compensatory damages and $500,000 in punitive damages against McGregor. The trial court disclosed both the nature and the amount of this award to the jury, over Plaintiff's objection.

12. At the close of Plaintiff's case, Charter moved for a directed verdict on the remaining counts in Plaintiff's Second Amended Complaint. This motion was granted in part and denied in part with respect to Count IV (negligent selection and supervision) and Count VI (fraudulent or negligent misrepresentation). The trial court also granted Charter's motion with respect to Count V (Unfair Practices Act) and Count VII (wrongful disclosure).

13. Plaintiff's request for jury instructions on punitive damages was refused. The trial court instructed the jury on Plaintiff's claims for negligent selection and supervision, and both fraudulent and negligent misrepresentation. The instructions did not indicate that the misrepresentation claims were pled in the alternative. The jury re-

turned a verdict awarding Plaintiff damages on each of these claims. These appeals followed.

## II. DISCUSSION

14. For the sake of clarity, our discussion departs from the order in which the issues arose in the trial court or were briefed by the parties on appeal. Instead, we address the parties' claims on appeal in the following order: (A) Plaintiff's wrongful disclosure claim against Cook; (B) the trial court's disclosure of the default judgment against McGregor; (C) Plaintiff's negligence claims against Charter; (D) Plaintiff's claim against Charter for fraudulent misrepresentation; (E) Plaintiff's claims against Charter for punitive damages; and (F) Plaintiff's claim against Charter for violation of the Unfair Practices Act.

### A. *Wrongful Disclosure of Confidential Communication*

15. In her capacity as director of the CCC, Cook disclosed to Plaintiff's husband (Mr. Eckhardt) that she knew (from talking to Plaintiff, McGregor, or both) that Mr. Eckhardt was an "abusive alcoholic" whose spousal abuse was related to his drinking. On appeal, Cook contends that this information was not privileged or confidential, and therefore its disclosure to Mr. Eckhardt was not wrongful. The trial court granted Defendant's motion for directed verdict on this issue, reasoning that Cook did not intend to harm Plaintiff by disclosing this information, and that the evidence was insufficient to establish that the disclosure was a proximate cause of Plaintiff's damages.

16. We determine that: (1) the information which Plaintiff shared with Cook or McGregor concerning Mr. Eckhardt's alcohol problem and spousal abuse was confidential; (2) Plaintiff was not required to prove that Cook's disclosure of this information was intended to harm her; and (3) the evidence was sufficient to establish a jury question as to whether the disclosure was a proximate cause of Plaintiff's damages. We reverse the trial court's ruling and remand for a jury trial on Plaintiff's wrongful disclosure claim. *See Sunwest Bank v. Garrett,* 113 N.M. 112, 115, 823 P.2d 912, 915 (1992) ("A directed verdict is appropriate only when there are no true issues of fact to be presented to a jury.").

17. We first address whether Plaintiff's wrongful disclosure claim is precluded by the trial court's finding that Cook did not intend to harm Plaintiff by making the disclosure to Mr. Eckhardt. We note that under some theories of recovery, a plaintiff may be required to prove that the disclosure was made with a malicious or harmful intent. *See, e.g., Clark v. Geraci,* 29 Misc.2d 791, 208 N.Y.S.2d 564, 568–69 (Sup.Ct.1960) (claim under prima facie tort theory required intent to harm). In addition, the fact that the disclosure was made in good faith may constitute one element of an affirmative defense to a wrongful disclosure claim. *See, e.g.,* NMSA 1978, § 32A–4–5(B) (1995) (persons reporting child neglect or abuse "shall be immune from liability . . . unless the person acted in bad faith or with malicious purpose"); *Simonsen v. Swenson,* 104 Neb. 224, 177 N.W. 831, 832 (1920) (qualified physician reporting diagnosis necessary to halt spread of highly contagious disease is immune from liability if acting in good faith, with reasonable grounds for diagnosis, and without malice). In the present case, however, Plaintiff does not bring her wrongful disclosure claim under a theory that requires an intent to harm, and we determine that the absence of such an intent, standing alone, is insufficient to establish a justification or excuse that would warrant a directed verdict.

■ 18. To support her claim that Cook owed her a duty of confidentiality, Plaintiff relies on *MacDonald v. Clinger,* 84 A.D.2d 482, 446 N.Y.S.2d 801 (1982). In *Clinger,* 446 N.Y.S.2d at 802, a New York court held that a psychiatrist's wrongful disclosure to a patient's spouse of personal information learned during the course of treatment "is a breach of the fiduciary duty of confidentiality and gives rise to a cause of action sounding in tort." The essence of the claim recognized in *Clinger* is that the relationship between a provider of mental health care and his or her patient is one of trust and confidence, and out of this special relationship springs a fiduciary duty not to disclose. *See id.,* 446

N.Y.S.2d at 805. In other contexts, New Mexico courts also have recognized that the confidential relationship between a health-care provider and his or her patient may give rise to a fiduciary duty. *See Keithley v. St. Joseph's Hosp.*, 102 N.M. 565, 569, 698 P.2d 435, 439 (Ct.App.1984) (duty to disclose all material information regarding treatment to patient); *Garcia v. Presbyterian Hosp. Ctr.*, 92 N.M. 652, 654–55, 593 P.2d 487, 489–90 (Ct.App.1979) (same).

19. However, the fiduciary duty of confidentiality is not absolute. "The contours of the asserted duty of confidentiality are determined by a legal source external to the tort claim itself[,]" *Humphers v. First Interstate Bank*, 298 Or. 706, 696 P.2d 527, 534 (1985) (en banc); and "its breach is actionable only if it is wrongful, that is to say, without justification or excuse." *Clinger*, 446 N.Y.S.2d at 805.

20. In the present case, we determine the contours of the asserted duty of confidentiality as well as any affirmative defenses of justification or excuse, by reference to expressions of public policy stated in New Mexico's professional licensing statutes, rules of evidence, and our state constitution. The New Mexico legislature has recognized that the duty to safeguard patient confidences extends to psychologists, social workers, mental health counselors and therapists, and their staffs. *See* NMSA 1978, §§ 61–9–18 (1989) (psychologists and psychologist associates); 61–9A–27 (1993) (mental health counselors and therapists); 61–31–24 (1989) (social workers); *cf. Jaffee v. Redmond*, 518 U.S. 1, 13–19, 116 S.Ct. 1923, 1930–32, 135 L.Ed.2d 337 (1996) (recognizing that it serves no discernible public purpose to draw distinctions between clinical social work and other mental health professions with regard to the need for confidentiality). In addition, the New Mexico Rules of Evidence recognize a psychotherapist-patient privilege under which a patient may "prevent any other person from disclosing confidential communications, made for the purposes of diagnosis or treatment of the patient's physical, mental or emotional condition ... among the patient, the patient's physician or psychotherapist, or persons who are participating in the diagno-

sis or treatment under the direction of the physician or psychotherapist...." Rule 11–504(B), NMRA 1997; *see also Jaffee*, 518 U.S. at 15, 116 S.Ct. at 1931 (recognizing privilege under federal rules). In the context of the criminal justice process, Article II, Section 24(A)(1) of the New Mexico Constitution recognizes that victims of crimes such as criminal sexual penetration and aggravated assault have "the right to be treated with fairness and respect for the victim's dignity and privacy...." *See also* NMSA 1978, § 31–26–4(A) (1995).

21. The expressions of public policy embodied in these authorities are consistent with the duty of confidentiality that health-care professions impose on their own members. Section 4 of the American Medical Association's Principles of Medical Ethics provides that: "A physician shall respect the rights of patients ... and shall safeguard patient confidences within the constraints of the law." American Psychiatric Ass'n, *The Principles of Medical Ethics with Annotations Especially Applicable to Psychiatry* § IV (1984). The National Association of Social Workers, of which McGregor was a member, also requires that a "social worker should respect the privacy of clients and hold in confidence all information obtained in the course of professional service." *Code of Ethics of the National Association of Social Workers* 2(H) (rev.1993).

22. By her own admission at trial, as the director of CCC, Cook had a relationship of trust and confidence with Charter patients that gave rise to a duty to maintain patient confidences. *See Garcia*, 92 N.M. at 655, 593 P.2d at 490 (hospital and its employees stand in confidential relationship with patient). This duty does not depend on whether Cook and McGregor were employees of the same company; it is sufficient that they both were participating in Plaintiff's diagnosis and treatment. *Cf.* Rule 11–504(A)(4), NMRA 1997; *State v. Gonzales*, 1996 NMCA 026, ¶ 15, 121 N.M. 421, 912 P.2d 297 ("confidentiality of a communication is preserved when disclosure is made as part of another confidential relationship"). Cook acknowledged in her testimony that her duty to maintain patient confidences generally applied to pa-

tients at the CCC, and specifically applied to the information that Cook obtained from her meeting with Plaintiff. Plaintiff's intent that both McGregor and Cook maintain confidentiality can be inferred from her consent to undergo diagnosis or treatment. *See State v. Roper*, 1996 NMCA 073, ¶¶ 12–13, 122 N.M. 126, 921 P.2d 322. We find Cook's claim on appeal that the information was not privileged or confidential to be inconsistent with both New Mexico law and her own testimony at trial. We conclude that Cook owed Plaintiff a duty to maintain confidentiality.

23. We next address whether Cook's good faith and absence of intent to harm Plaintiff in making the disclosure, provide a justification or excuse that bars Plaintiff's claim of wrongful disclosure as a matter of law. New Mexico's statutes and rules of evidence provide for specific exceptions in which the public interest may outweigh the duty of confidentiality and allow or require a health-care provider to make a disclosure. Health-care providers must report actual or suspected cases of child neglect or abuse. *See* NMSA 1978, § 32A–4–3(A) (1997). Such reports are not subject to the psychotherapist-patient privilege insofar as they are communications that the therapist is "required by statute to report to a public employee or state agency." *See* Rule 11–504(D)(4), NMRA 1997. There is an exception for disclosures which are necessary to protect against dangers that patients may pose to themselves or others. *See* §§ 61–9A–27(B), 61–31–24(B) (allowing for disclosure of confidential information that reveals contemplation of crime or harmful act or indicates that person was victim of crime required to be reported by law); *Clinger*, 446 N.Y.S.2d at 805 (recognizing that necessity of disclosing information to protect against danger that patient poses to himself or others may provide affirmative defense to wrongful disclosure claim). Rule 11–504(D) also lists specific exceptions to the psychotherapist-patient privilege for certain communications that involve parties in litigation. Finally, a crime victim may waive this privilege by signing a written release allowing a district attorney to access her medical records. *See Gonzales*, 1996 NMCA 026, ¶ 16, 121 N.M. 421, 912 P.2d 297.

24. However, our statutes and rules recognize no general exception covering all disclosures that are made in good faith, and we conclude that Cook's good faith (or lack of bad motive), standing alone, is insufficient to establish a justification or excuse that bars Plaintiff's claim of wrongful disclosure as a matter of law.

25. We next address the trial court's finding that the evidence was insufficient to create a jury question regarding whether Cook's disclosure was a proximate cause of Plaintiff's damages. The trial court questioned whether Plaintiff had met her burden of proving which damages were caused by Cook's disclosure as opposed to McGregor's assault. We disagree with the trial court that Plaintiff's damages stemming from the assault preclude a finding that she sustained damages as a result of the disclosure. As noted in our Uniform Jury Instructions, a proximate cause of an injury "need not be the only cause, nor the last nor nearest cause. It is sufficient if it occurs with some other cause acting at the same time, which in combination with it, causes the injury." UJI 13–305, NMRA 1997.

26. Plaintiff testified that the last thing she wanted was to have someone at Charter tell her husband that Plaintiff had told Charter that her husband was abusing her. She was afraid that the abuse would get worse if he found out. Plaintiff told her therapist, Dr. Fineman, that Mr. Eckhardt had been very angry about Cook's disclosure and increasingly angry at Plaintiff. Plaintiff became more fearful of him, the hitting increased, and the marital relationship became "exceedingly difficult." Plaintiff claimed that the disclosure undermined her trust in therapy to such an extent that she did not seek further therapy at that point. This evidence was sufficient to create a jury question on the issue of whether Cook's disclosure was a proximate cause of Plaintiff's damages. *See Calkins v. Cox Estates*, 110 N.M. 59, 61, 66, 792 P.2d 36, 38, 43 (1990) (proximate cause is a question of fact for the jury to answer); *Garrett*, 113 N.M. at 115, 823 P.2d at 915 (directed verdict is not appropriate where

there are true issues of fact to be presented to jury).

27. We reverse the trial court's order granting a directed verdict on Plaintiff's claim of wrongful disclosure and remand for a jury trial on this claim.

### B. Disclosure to Jury of Default Judgment Against McGregor

28. Plaintiff asserts that she was unfairly prejudiced by the trial court's disclosure to the jury of the $1 million default judgment against McGregor in that the jurors substantially reduced their award against Charter because the disclosure led them to believe that Plaintiff already had been adequately compensated by McGregor. Over Plaintiff's objection, the trial court addressed the jury as follows:

> The court has entered a judgment against Mr. McGregor, again as a default matter, in the amount of $1,000,000.00; $500,000 in compensatory damages and $500,000 in punitive damages ... again that is the matter of a default matter which was the amount requested by the plaintiff.

29. Plaintiff does not seek a new trial on the claims for which she prevailed. However, because the issue could recur on remand of the wrongful disclosure claim, we take this opportunity to examine the circumstances, if any, under which a trial court can disclose to a jury the nature and amount of a default judgment entered against an absent co-defendant.

30. This disclosure presents an issue of first impression in New Mexico. Plaintiff argues that the prejudice resulting from the disclosure of the amount of the default judgment can be likened to the prejudice that a defendant suffers when jurors are informed of the existence of a defendant's insurance coverage. We agree that such disclosures may unfairly prejudice a party by prompting jurors to base their decision on that party's apparent wealth rather than on facts which are material to the issues tried. See Rule 11–411, NMRA 1997; Cardoza v. Town of Silver City, 96 N.M. 130, 136–37, 628 P.2d 1126, 1132–33 (Ct.App.1981). However, the amount of a judgment against a co-defendant differs significantly from evidence of a defendant's insurance coverage because the former could, by implication, attribute wealth to the plaintiff, and the latter could, by implication, attribute wealth to a defendant. We discern potential damage to both parties in the former circumstance.

31. We believe that our Supreme Court's recent opinion in Fahrbach v. Diamond Shamrock, Inc., 122 N.M. 543, 546–50, 928 P.2d 269, 272–76 (1996), and Rule 11–408, NMRA 1997, as interpreted in Fahrbach, provide a more appropriate analogy and basis for analysis. Rule 11–408 states that neither party may introduce evidence of a settlement for the purpose of proving "liability for or invalidity of the claim or its amount." (Emphasis added.) We believe that this rule, and its underlying policy as expressed in Fahrbach, strongly suggest that disclosure of the amount of money that a plaintiff is awarded from an absent co-defendant is unfairly prejudicial and does not serve a valid purpose. In Fahrbach, the trial court informed jurors that there were additional defendants who had settled the plaintiff's claims against them and would not be participating in the trial, although jurors would hear evidence concerning their conduct and would be given an opportunity to assess their fault in causing the plaintiff's injuries. Id. at 545, 928 P.2d at 271. Our Supreme Court concluded that the trial court did not abuse its discretion in informing the jury of the fact of settlement because in doing so the trial court was attempting "to eliminate what it reasonably perceived as unnecessary confusion" regarding the status of the absent co-defendants. Id. at 549–550, 928 P.2d at 275–76.

32. In the present case, the trial court's decision to disclose the fact of default judgment fell within its authority to manage the trial and rule on evidentiary matters, and we review that action for abuse of discretion. Id. at 548, 928 P.2d at 274. A trial court may inform jurors about the reason for a co-defendant's absence if this absence presents a source of confusion, especially when the parties suggest no alternative means of clearing up the confusion. Id. at 549, 928 P.2d at 275. In the present case, however, no state

of confusion was evident and we find no discernible reason for the court to have made the disclosure. The trial court did not only inform the jury of the fact that a default judgment was entered, it went on to state both the *amount* of the default judgment ($1 million) and that this judgment included the sum of $500,000 in punitive damages. Moreover, the court refused to allow Plaintiff to present evidence to the jury regarding McGregor's insolvency and the uncollectibility of the award. Under these circumstances, we conclude that the trial court abused its discretion in disclosing the amount of the default judgment against McGregor.

 33. We further determine that disclosure of the punitive nature of the default judgment was impermissible. Punitive damages are personal to the wrongdoer, and imply nothing with regard to the liability of or damages owed by other defendants. "Punitive damages do not measure a loss to the plaintiff, but rather punish the tortfeasor for wrongdoing and serve as a deterrent." *Sanchez v. Clayton,* 117 N.M. 761, 766, 877 P.2d 567, 572 (1994); *see also Clay v. Ferrellgas, Inc.,* 118 N.M. 266, 269, 881 P.2d 11, 14 (1994) ("The purpose of punitive damages is to punish a wrongdoer."). Hence, "[i]n determining whether a punitive award is justified, the focus is directed at the nature or character of the conduct of the defendant. It is not directed at the nature or extent of the harm sustained by the plaintiff." 1 James D. Ghiardi & John J. Kircher, *Punitive Damages Law and Practice* § 5.01 (1996). For this reason, "punitive damages against two or more defendants must be separately determined." *Sanchez,* 117 N.M. at 766, 877 P.2d at 572 (citation omitted); *see also* Henry Woods & Beth Deeve, *Comparative Fault* § 7.5 (3d. ed.1996) (majority of jurisdictions will not apportion punitive damages award according to comparative fault principles).

34. We discern no valid purpose for disclosing to the jury the fact that punitive damages were awarded against McGregor and the amount of such award. We also reject the proposition that such a disclosure is harmless. In addition to the concern noted above regarding the unfair prejudice caused by attributing wealth to Plaintiff, this disclosure could prejudice other defendants by implying that they, too, deserve to be punished as McGregor was, or by associating the bad actions of one defendant with another. The disclosure of the punitive nature and amount of the default judgment against McGregor was improper.

## C. Negligence

 35. Charter contends that the judgment on Plaintiff's negligence claims must be reversed because it is premised on an error by the trial court in failing to rule on the legal question of whether Charter owed a duty to Plaintiff as one of its patients. The trial court gave the jury a special-verdict form requiring it to make an initial determination of whether Plaintiff was a Charter patient. If the jury did not find that Plaintiff was a Charter patient, the jury was instructed not to answer any further questions. The jury determined that Plaintiff was Charter's patient.

 36. We agree with Charter that Plaintiff's negligence claims must be premised on a duty that Charter owed to Plaintiff, *see Lopez v. Maez,* 98 N.M. 625, 630, 651 P.2d 1269, 1274 (1982), and it is for the court to determine as a matter of law whether such a duty exists. *See Calkins,* 110 N.M. at 61, 792 P.2d at 38; *Sarracino v. Martinez,* 117 N.M. 193, 194, 870 P.2d 155, 156 (Ct.App. 1994). However, Plaintiff's case presents circumstances in which the question of whether Charter owed her a duty depends on the existence of particular facts. *See Sarracino,* 117 N.M. at 194, 870 P.2d at 156. We determine that the trial court correctly held that the existence of a duty owed by Charter to Plaintiff depended on whether Plaintiff was a Charter patient, and that Plaintiff's status as a Charter patient presents a mixed question of fact and law for the jury to answer by means of a special interrogatory. We find no error in submitting this question to the jury.

37. The parties agree to the legal definition of "patient" take from the Medical Malpractice Act. A patient is defined as "a natural person who received or should have received health care from a licensed health care provider, under a contract, express or implied." NMSA 1978, § 41–5–3E (1977).

However, they disagree as to the existence of a contract, either express or implied, under which Plaintiff received (or should have received) health care from Charter.

38. To establish the existence of an implied contract with Charter, Plaintiff points to evidence that she responded to Charter's advertisements, attended Charter's workshop given at Charter's counseling center, and filled-out an evaluation form given to her by Cook, a Charter employee, who then delegated the task of "following up" with Plaintiff to McGregor, a contract therapist whom cook identified as "our therapist" and who was given "temporary privileges" by Charter, including an office in Charter's counseling center, clerical support from Charter employees, Charter business cards listing his name and title next to the Charter logo, and the use of Charter letterhead on which McGregor wrote a letter to request funding for Plaintiff's therapy. Charter contends that this evidence only shows that Plaintiff went to Charter for services, not that Charter (as opposed to McGregor) agreed to provide her with any services.

39. We disagree with Charter's assessment. The question of whether Plaintiff was a patient of Charter involves conflicting evidence for the trier of fact to resolve. "[W]here the facts and circumstances of the relationship between the parties are at issue, [the] existence of a duty may become a mixed question of law and fact under which the fact issue must be submitted to the jury for resolution." *R.A. Peck, Inc. v. Liberty Fed. Sav. Bank,* 108 N.M. 84, 89, 766 P.2d 928, 933 (Ct.App.1988). "[W]hen the existence of a contract is at issue and the evidence is conflicting or permits more than one inference, it is for the finder of fact to determine whether the contract did in fact exist." *Garcia v. Middle Rio Grande Conservancy Dist.,* 99 N.M. 802, 807, 664 P.2d 1000, 1005 (Ct. App.1983), *overruled on other grounds by Montoya v. AKAL Sec., Inc.,* 114 N.M. 354, 357, 838 P.2d 971, 974 (1992).

40. Charter next contends that even if the jury properly determined whether Plaintiff was a Charter patient, that finding is insufficient to establish the scope of the duty that it owed to her without further legal determinations by the trial court. Again, we disagree. The trial court's instructions adequately conveyed to the jury that, if Plaintiff was a Charter patient, then Charter had a duty to act with reasonable care in furnishing services to her. The trial court did not err by instructing the jury to resolve the factual disputes concerning whether Charter breached its duties and whether such breaches were the proximate cause of the damages sustained by Plaintiff.

### 1. *Negligent Selection and Supervision*

41. In order to establish that Charter was negligent in its selection and supervision of McGregor, the jury was instructed that it had to find that Plaintiff met its burden of proving at least one of the following contentions:

1. [Charter] negligently selected William Kent McGregor as a contract therapist by failing to adequately investigate McGregor's current clinical competency;

2. [Charter] negligently selected William Kent McGregor as a contract therapist by failing to adequately investigate McGregor's drug and alcohol addiction;

3. [Charter] negligently selected William Kent McGregor as a contract therapist by negligently granting him temporary staff privileges with an incomplete application;

4. [Charter] negligently failed to supervise William Kent McGregor;

5. [Charter] negligently selected William Kent McGregor to treat Plaintiff.

These instructions are consistent with New Mexico law which recognizes that the doctrine of corporate negligence may impose liability on a hospital for the negligent granting of staff privileges or the negligent supervision of treatment. *See Diaz v. Feil,* 118 N.M. 385, 389, 881 P.2d 745, 749 (Ct.App. 1994).

42. In order to make a prima facie showing that Charter negligently retained or granted staff privileges to McGregor, Plaintiff had to establish that Charter negligently failed to screen McGregor's competency, or that it negligently retained him after it knew or should have known of matters involving his general competency. *See id.* at 390, 881

P.2d at 750. Charter would have to have had prior notice of McGregor's lack of competency before it could be held liable for either granting or continuing staff privileges. *Id.*

43. Plaintiff presented evidence that members of Charter's staff, including Cook, knew of McGregor's past substance abuse problem and his lack of recent clinical experience following his treatment for substance abuse. Plaintiff also presented evidence that under the required standard of care, Charter's Credentials Committee should have obtained more objective information about McGregor's substance abuse history, and that Charter obtained only two of twelve items required for McGregor's credentials. There is evidence that Charter did not provide clinical supervision, peer review, or quality assurance regarding McGregor's services at the Counseling Center. Before the credential review process was complete, Charter issued business cards to McGregor, failed to supervise his use of the cards, and instructed McGregor to "follow up" with Plaintiff after she attended one of Charter's free workshops.

■■■ 44. Charter disputes these facts. However, in reviewing the evidence supporting the jury's verdict, this Court resolves all disputed facts in favor of the successful party, indulges all reasonable inferences in support of the verdict, and disregards all evidence and inferences to the contrary. *See Clovis Nat'l Bank v. Harmon,* 102 N.M. 166, 168–69, 692 P.2d 1315, 1317–18 (1984). We therefore affirm the judgment with respect to Plaintiff's claim of negligent selection and supervision.

### 2. *Negligent Misrepresentation*

■■■ 45. Plaintiff alleged two separate categories of statements as the basis for her misrepresentation claims: (1) misrepresentations about the nature and quality of Charter programs in its advertisements and brochures; and (2) misrepresentations that McGregor was an employee. Defendant moved for a directed verdict with respect to both of these categories and asserted that Plaintiff lacked standing to make such a challenge with respect to Charter's advertisements and brochures. The trial court grant-

ed Charter's motion for a direct verdict with respect to the advertisements and brochures because the court found that these items fairly characterized the services available either through the CCC or the Charter Hospital in Albuquerque. Consequently, only one category of misrepresentation was presented to the jury—Charter's alleged misrepresentation that McGregor was a Charter employee.

■■■ 46. On appeal, Plaintiff attempts to resurrect her claim that Charter's advertising contained misrepresentations about the nature and quality of its programs. This attempt fails. We agree with the trial court that Charter's advertising and promotional materials, in and of themselves, are not false or misleading. Plaintiff presented no evidence that Charter failed to provide her with the free seminars or other programs that it advertised, or that the quality of such seminars or programs fell below the industry standard. On the contrary, Plaintiff testified that she attended one of Charter's free seminars and found it helpful. However, we agree with Plaintiff that Charter's advertising was relevant to her claim that Charter misrepresented McGregor's status as a Charter employee. Charter's advertisements could have contributed to Plaintiff's belief that, as a Charter employee, McGregor was qualified to conduct therapy or other programs that Charter advertised. The advertisements also specifically represented that McGregor "has been in private practice for seven years" and "has extensive experience as a psychotherapist in private practice as well as leading numerous groups and workshops." Thus, we will consider Charter's advertising in the context of Plaintiff's claim that Charter misrepresented McGregor's employment status.

47. The trial court gave the following instruction on negligent misrepresentation:

To establish a claim of negligent misrepresentation, Plaintiff has the burden of proving that Charter Hospital of Albuquerque, Inc. made the following false misrepresentation:

1. Charter Hospital of Albuquerque, Inc. negligently misrepresented to plaintiff

that McGregor was its employee at the Charter Counseling Center of Santa Fe when he was not its employee;

Plaintiff has the burden of showing that Charter Hospital of Albuquerque, Inc. intended that plaintiff would rely on the false representation and that she did, in fact, rely on the false representation.

Plaintiff also contends and has the burden of proving that such negligent misrepresentation was a proximate cause of her injuries and damages.

The court further instructed the jury that "[a] material misrepresentation is an untrue statement which a party intends the other party to rely on and upon which the other party did in fact rely."

48. In this case, the falsity of any representation that McGregor was a Charter employee is not in dispute, as the trial court instructed the jury that McGregor was an independent contractor, not a Charter employee. Rather, the dispute concerns whether Charter made such a representation to Plaintiff with the intent that she rely upon it, whether Plaintiff did in fact rely upon such a representation, and whether such reliance was a proximate cause of her damages.

49. Plaintiff testified that she was not informed of McGregor's status as an independent contractor either by CCC employees, or by CCC's signs, advertisements, or promotional materials. She presented evidence that Charter allowed McGregor to use business cards and stationery with the Charter logo, referred to him as "our therapist" at Charter's free seminars, listed him by name in Charter advertisements, and provided him with an office and clerical support in a building that was identified as a Charter facility. Cook acknowledged in her testimony that persons such as Plaintiff might believe that McGregor was a Charter employee under these circumstances, and there was evidence that Charter intended McGregor to facilitate Charter's contact with patients, and thereby generate revenue for Charter, under this arrangement. Plaintiff testified that she relied on these representations as a basis for selecting McGregor as her therapist. As an employee on Charter's clinical staff, McGregor could be expected to have the credentials

and supervision required under Charter's Clinical Staff Bylaws. Plaintiff's expert, Dr. Fineman, testified that Charter should have foreseen that a therapist who lacked such credentials or supervision could encounter problems with the transference or counter-transference of sexual feelings between therapist and patient.

50. We determine that the evidence presented at trial was sufficient to support the jury's verdict in this case with respect to the claims for negligent misrepresentation and negligent selection and supervision. *See Harmon*, 102 N.M. at 168–69, 692 P.2d at 1317–18. The judgment as to these claims is affirmed.

### D. *Fraudulent Misrepresentation*

51. Charter raises several challenges to the judgment regarding Plaintiff's claim of fraudulent misrepresentation. We initially address Charter's contention that the trial court failed to rule on Charter's Amended Motion for Summary Judgment. This issue lacks merit. A review of the record discloses that the trial court heard all motions for summary judgment on June 5, 1995 and denied both the plaintiff's and defendant's motions.

52. Charter next contends that the trial court erroneously permitted the jury to consider the claim of fraudulent misrepresentation and that the Plaintiff was impermissibly allowed a double recovery for both negligence and fraud pertaining to the same misrepresentation. We determine that the trial court erred in submitting the claim of fraudulent misrepresentation to the jury and reverse the judgment with respect to the damages awarded on that claim. Our disposition of Plaintiff's fraud claim makes it unnecessary for us to address the issue of double recovery.

53. As noted in our discussion of negligent misrepresentation, on appeal Plaintiff attempts to resurrect her claim that Charter made misrepresentations about the nature and quality of Charter programs in its advertisements and brochures. Since we agree with the trial court's determination that the advertisements were not false, these adver-

tisements do not provide an independent basis for Plaintiff's claim of fraudulent misrepresentation. We limit our discussion of this issue to Charter's misrepresentations concerning McGregor's status as a Charter employee.

54. The court gave the jury the following instruction on fraudulent misrepresentation:

To establish a claim of fraudulent misrepresentation, Plaintiff has the burden of proving that Charter Hospital of Albuquerque, Inc. made the following false representation:

1. Charter Hospital of Albuquerque, Inc. intentionally gave the impression to Kathleen Eckhardt that McGregor was its employee at the Charter Counseling Center of Santa Fe when it knew that he was not its employee;

Plaintiff has the burden of showing that Charter Hospital of Albuquerque, Inc. intentionally made this representation with the intent to deceive plaintiff or with reckless disregard for its truthfulness and to induce plaintiff to rely on the representations;

Plaintiff also has the burden of proving that the plaintiff reasonably relied on the representations made by Charter Hospital of Albuquerque, Inc.

The Plaintiff also contends and has the burden of proving that such fraudulent misrepresentation was a proximate cause of her injuries and damages.

■ 55. We distinguish the elements of negligence and fraud as follows: (1) fraudulent misrepresentation requires an untrue statement, while negligent misrepresentation may involve a statement that is "literally true" but misleading; (2) fraudulent misrepresentation requires the defendant to make the statement recklessly or with knowledge that it is false, while negligent misrepresentation only requires a failure to exercise ordinary care in obtaining or communicating the statement; (3) fraudulent misrepresentation requires an intent to deceive, while negligent misrepresentation only requires an intent that the plaintiff receive and be influenced by the statement where it is reasonably foreseeable that the plaintiff would be harmed if the information conveyed was incorrect or mis-

leading. *See* UJI 13–1632, NMRA 1997 (negligent misrepresentation); UJI 13–1633, NMRA 1997 (fraud); *State ex rel. Nichols v. Safeco Ins. Co.,* 100 N.M. 440, 443 n. 1, 671 P.2d 1151, 1154 n. 1 (Ct.App.1983) (citing Restatement (Second) of Torts § 552 cmt. (a) (1977)).

■ 56. Finally, while negligent misrepresentation may be proven by a preponderance of the evidence, common-law fraud must be proven by clear and convincing evidence. *See* UJI 13–1633; *Safeco,* 100 N.M. at 443, 671 P.2d at 1154; *Eoff v. Forrest,* 109 N.M. 695, 699, 789 P.2d 1262, 1266 (1990). We agree with Charter that there is no direct evidence that Charter or its employees intended to deceive or harm Plaintiff by misrepresenting McGregor's employment status or qualifications. Charter never affirmatively stated to Plaintiff that McGregor was a Charter employee. Rather, the evidence showed that Charter was negligent in failing to clarify McGregor's status during the period when his application for clinical staff privileges was pending. Although the jury was permitted to infer the requisite intent from circumstantial evidence, the inference must be reasonable. *See* UJI 13–308, NMRA 1997; *Cf. Landavazo v. Sanchez,* 111 N.M. 137, 138, 802 P.2d 1283, 1284 (1990) ("Substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion."). In this case, the evidence does not support a reasonable inference that Charter had the intent to deceive Plaintiff regarding McGregor's employment status. We reverse the judgment with respect to Plaintiff's claim of fraudulent misrepresentation.

### E. *Punitive Damages*

■ 57. Plaintiff contends that the trial court erred by failing to instruct the jury that it may award punitive damages on Plaintiff's claims for negligent or fraudulent misrepresentation and negligent selection and supervision. "To be liable for punitive damages, a wrongdoer must have some culpable mental state, and the wrongdoer's conduct must rise to a willful, wanton, malicious, reckless, oppressive, or fraudulent level."

*Ferrellgas,* 118 N.M. at 269, 881 P.2d at 14 (citations omitted). We review the trial court's findings regarding punitive damages for abuse of discretion. *See New Mexico Hosp. Ass'n v. A.T. & S.F. Mem. Hosps. Inc.,* 105 N.M. 508, 513, 734 P.2d 748, 753 (1987). Because an appellate court does not reweigh the evidence, we only examine whether substantial evidence supports the trial court's ruling after viewing the facts and all reasonable inferences in the light most favorable to the party resisting the motion. *Gonzales v. Surgidev Corp.,* 120 N.M. 133, 145, 899 P.2d 576, 588 (1995).

58. We determine that the trial court did not abuse its discretion in finding that Charter's negligence did not rise to the level of culpability required for imposition of punitive damages. There is no evidence of Charter's intent to defraud or harm Plaintiff by deceiving her regarding McGregor's employment status. While we recognize that a breach of duty is more likely to demonstrate a culpable mental state as the risk of danger increases, *Ferrellgas,* 118 N.M. at 269, 881 P.2d at 14, this principle is not dispositive in the present case because there was no evidence that Charter knew prior to the assault on Plaintiff that McGregor presented an especially high risk of danger to its patients. We affirm the trial court's decision to strike the claims for punitive damages as to negligent selection, supervision, and misrepresentation.

#### F. *Violation of Unfair Practices Act*

59. Plaintiff contends that the trial court erred by granting a directed verdict dismissing her claim that Charter violated the Unfair Practices Act, NMSA 1978, §§ 57–12–1 through –22 (1967, as amended through 1995), by issuing false and misleading advertisements concerning its goods and services on which Plaintiff relied to her detriment.

60. "Generally, the Unfair Practices Act is intended to provide a private remedy for individuals who suffer pecuniary harm for conduct involving either misleading identification of a business or goods, or false or deceptive advertising." *Parker v. E.I. Du Pont de Nemours & Co.,* 121 N.M. 120, 132, 909 P.2d 1, 13 (Ct.App.1995). Thus, an essential element of Plaintiff's claim regarding an "unfair or deceptive trade practice" under the Act is that a "false or misleading oral or written statement, visual description or other representation of any kind [was] knowingly made [by Charter] in connection with the sale, lease, rental or loan of goods or services...." Section 57–12–2(D); *Ashlock v. Sunwest Bank,* 107 N.M. 100, 101, 753 P.2d 346, 347 (1988), *overruled on other grounds by Surgidev,* 120 N.M. at 140, 899 P.2d at 583. The subjective belief of the party receiving the information is not sufficient to establish a violation of the Act. *See Page & Wirtz Constr. Co. v. Solomon,* 110 N.M. 206, 210, 794 P.2d 349, 353 (1990).

61. Since Plaintiff failed to show that Charter's advertising was false or misleading in connection with the sale of its goods and services, she failed to establish a claim under the Unfair Practices Act. *See Ashlock,* 107 N.M. at 101, 753 P.2d at 347. Therefore, we affirm the trial court's decision to dismiss Plaintiff's claim for violation of the Unfair Practices Act.

### III. CONCLUSION

62. We affirm the judgment with respect to Plaintiff's claims for negligent misrepresentation and negligent selection and supervision. We affirm the trial court's decision to grant a directed verdict dismissing Plaintiff's claims for violation of the Unfair Practices Act and punitive damages. We reverse the judgment with respect to Plaintiff's claims for fraudulent misrepresentation, and we reverse the trial court's decision to grant a directed verdict dismissing Plaintiff's claim for wrongful disclosure. We remand to the trial court for trial on Plaintiff's wrongful disclosure claim.

63. **IT IS SO ORDERED.**

ALARID and FLORES, JJ., concur.